UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| AMERICAN DENTAL MEDICAL TECHNOLOGY, LLC, a Washington Limited Liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) | No. CV-08-103-LRS |
| vs. | ) ) ) | **ORDER GRANTING MOTION TO TRANSFER,** *INTER ALIA* |
| A.K. RUBBER PRODUCTS COMPANY, INC., | ) ) ) | |
| Defendant. | ) ) | |

**BEFORE THE COURT** is the Defendant's Motion To Transfer Venue (Ct. Rec. 25). This motion was heard with telephonic oral argument on December 23, 2008. Jeffrey C. Grant, Esq., argued on behalf of Plaintiff. C. Christine Burns, Esq., argued on behalf of Defendant. Plaintiff's related motions to strike the declaration of Bernie Stritzke (Ct. Rec. 47) and to strike the declaration of Thomas Collopy (Ct. Rec. 63) have been considered without oral argument.

**I. BACKGROUND**

This is a diversity action. Plaintiff, American Dental Medical Technology, LLC ("ADMT"), is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Spokane. A.K. Rubber Products Company, Inc., ("A.K.")is a Wisconsin corporation with its principal

**ORDER GRANTING
MOTION TO TRANSFER-            1**

place of business in Elkhorn, Wisconsin. The parties negotiated a contract in 2003 for A.K. to manufacture a dental tool handle designed by ADMT in Spokane. ADMT alleges that A.K. breached the contract by manufacturing a defective product.

A.K. now moves under 28 U.S.C. §1404(a) to transfer venue of this action to the Eastern District of Wisconsin.

## II. DISCUSSION

28 U.S.C. §1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A district where the action "might have been brought" is one having subject matter jurisdiction over the controversy, where defendants are subject to personal jurisdiction, and where venue is proper. *Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S.Ct. 1084, 1089-90 (1960). ADMT does not dispute that the Eastern District of Wisconsin is a district where this action "might have been brought."

The moving party has the burden of proving that the "convenience of the parties and the witnesses" and the "interest of justice" requires transfer to another district. *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). A transfer will not be ordered if the result is merely to shift the inconvenience from one party to another. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Among the factors considered under §1404(a) are: 1) convenience of witnesses; 2) judicial economy (avoidance of duplicative litigation); 3) relative ease of access to proof; 4) availability of compulsory process to secure witness attendance; 5) relative means of the parties; 6) relative docket congestion; and 7) local interest in having localized controversies decided at home. *Id*. Additional factors are (1) the location where the relevant agreements were negotiated and

**ORDER GRANTING
MOTION TO TRANSFER-          2**

executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to plaintiff's cause of action in the chosen forum; and (6) differences in the cost of litigation in the two forums. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

In general, a plaintiff's choice of forum is accorded substantial weight in §1404(a) proceedings. A transfer will not be ordered unless the "convenience" and "justice" factors strongly favor venue elsewhere. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).

**A.  Contacts With Eastern District of Washington and Eastern District of Wisconsin**

The specifications for the dental instruments in question, including all molds and the etching process and testing protocols necessary to ensure that the silicone adhered to the substrate base, were designed in Spokane. The marketing analysis, production requirements, and terms of sale and distribution originated in Spokane. An engineer from A.K., Jeff Davis, made one or two visits to ADMT's production facility in Spokane in March 2003, apparently before the parties' written contract was negotiated and executed.

The contract between the parties was negotiated and executed in Wisconsin. ADMT executives traveled to Elkhorn, Wisconsin to negotiate the contract and made several visits to Elkhorn thereafter.[1] During the "Generation 2" work which

---

[1] In their declarations submitted in response to the Motion To Transfer Venue, former ADMT executives Allan Holms and Troy Mallonee take issue with specific paragraphs (5, 6, 8 and 9) contained in the declaration of Bernie Stritzke that was submitted by A.K. in support of its motion. Significantly, Holms and Mallonee do not dispute the information contained in Paragraph 4 of Stritzke's declaration that they traveled to Elkhorn, Wisconsin to negotiate and finalize a contract, that the

**ORDER GRANTING**
**MOTION TO TRANSFER-            3**

began after August 2005 and which is at issue here, the plastic part of the dental tool handle was manufactured in an A.K. affiliate facility in Monticello, Iowa, and the silicone substrate was bonded to the plastic handle in Elkhorn, Wisconsin. ADMT acknowledges it turned over to A.K. the specifications, molds, and etching process to build the molds used in the silicone overmolding process. After the bonding process was completed in Wisconsin, the handles were sent to Dental USA in McHenry, Illinois for insertion of metal tips.[2] In 2005, ADMT entered into a relationship with Discus Dental ("Discus") whereby it agreed to supply completed dental handles to Discus for distribution. The completed handles were shipped directly from Dental USA to Discus for distribution. In May 2006, handles were delivered to Discus which ADMT alleges contained numerous flaws. Discus

---

contract was negotiated and executed in Wisconsin, and that they visited Wisconsin several more times during the course of the business relationship between ADMT and A.K.. Although it appears Stritzke was not involved in the contracting process because he did not become the general manager of A.K. until early 2006, neither Holms or Mallonee specifically assert the contract was negotiated and executed somewhere other than Wisconsin (i.e., Washington). Considering the detail contained in their declarations and their pointing out of deficiencies in specific paragraphs of the Stritzke declaration, the silence of Holms and Mallonee on these particular matters cannot be ignored.

[2] In their declarations, neither Holms or Mallonee take issue with Stritzke's assertion in Paragraph 6 of his declaration that "[d]uring the time period relevant to this lawsuit, the plastic handle of the dental tool was molded at A.K. Rubber plant in Monticello, Iowa; the silicone grip was molded and bonded in Elkhorn, Wisconsin." Holms and Mallone assert only that Paragraph 6 is incomplete because it failed to mention that A.K. was required to send batch samples directly to ADMT from each handle run. Furthermore, Stritzke, as general manager of A.K. in early 2006, would have personal knowledge of the "Generation 2" work (i.e., the plastic part of the handle being manufactured in Iowa, the bonding process taking place in Wisconsin, and the insertion of the metal tip taking place in Illinois).

**ORDER GRANTING
MOTION TO TRANSFER-         4**

rejected another shipment of the tools in July 2006. In August 2006, A.K. shipped handles to ADMT's Spokane facility for testing which ADMT alleges revealed flaws in the product. In September 2006, Discus terminated its distribution contract with ADMT because of the alleged flawed products. This precipitated the breach of contract action by ADMT against A.K.

Based on the foregoing, the court finds that the majority of the contacts, and the contacts most significant and relevant to this litigation, occurred in Wisconsin and/or in the neighboring states of Iowa and Illinois.

### B. Alleged Forum Selection Clause

Although ADMT alludes to a possible oral agreement with A.K. regarding selection of a forum for litigation, that being the Eastern District of Washington, apparently no forum selection clause was included in the actual written contract executed by the parties. In any event, forum selection clauses, although a factor for the court to consider, are not controlling in determining whether or not a transfer should be granted. Determination of party and witness "convenience," and "interest of justice" is committed to the court's discretion. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30, 108 S.Ct. 2239 (1988).

### C. Governing State Law

Citing Washington's "most significant relationship test" for determining the governing law[3], ADMT contends Washington law applies, while A.K. contends Wisconsin law applies. It is not apparent there is a conflict between Washington and Wisconsin law such that a decision needs to be made at this time regarding the

---

[3] In a diversity case, a federal court applies the choice of law laws of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 847, 61 S.Ct. 1020 (1941).

**ORDER GRANTING**
**MOTION TO TRANSFER-        5**

governing law in order to assess the weight of this factor in determining whether venue should be transferred.  A mere assumption there is a conflict between Washington and Wisconsin law is not enough to justify the court engaging in a choice of law analysis to determine what is likely to be the governing law.  "An actual conflict between the law of Washington and the law of another state must be shown to exist before Washington courts will engage in a conflict of law analysis." *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 103, 864 P.2d 937, 942 (1994). Because the weight of the other factors, as discussed herein, favor transfer, the Eastern District of Wisconsin will determine if there is a conflict and if so, what the governing law should be regarding the parties' contract.

### D.  Timing Of  Motion To Transfer

The court conducted a scheduling conference in this matter on June 19, 2008 and the scheduling order was filed the following day.  Pursuant to the order, initial disclosures have been made and ADMT has made expert designations which are subject to a motion to strike filed by A.K., currently noted for hearing without oral argument on January 2, 2009.  The discovery deadline is February 17, 2009. ADMT does not dispute that although written discovery has been exchanged, there have been no depositions.  No dispositive motions have been filed or ruled upon by the court.  Trial is currently set for June 15, 2009.

A transfer for convenience should be sought as soon as the "inconvenience" becomes apparent, preferably with or before the first responsive pleading. *SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978).  ADMT's complaint was filed March 26, 2008 (Ct. Rec. 1).  In its answer, filed May 7, 2008 (Ct. Rec. 7), A.K. asserted an affirmative defense that ADMT's choice of venue was

**ORDER GRANTING**
 **MOTION TO TRANSFER-         6**

"improper." While that is not specifically a "convenience" challenge[4], it certainly indicates A.K. was not persuaded the Eastern District of Washington should be the place where litigation occurred. In the Joint Status Report filed June 17, 2008 (Ct. Rec. 20), A.K. made clear its assertion "that venue is most appropriate in the Eastern District of Wisconsin" and that it intended to file a motion to transfer venue. The motion to transfer was not filed until November 20, 2008, but A.K. says this was due in part to the fact that ADMT's counsel was out of the country on an extended vacation during the summer months and requested that no motions be filed during that time. A.K. contends the parties also explored settlement and mediation after the June 19 status conference. Although counsel for ADMT cannot recall settlement and mediation being explored, he did not deny that he took an extended vacation and asked that no motions be filed.

The court cannot find the delay in filing the motion has caused undue prejudice to ADMT or substantially increased the expense of litigation. Nor has A.K. brought the motion merely as a dilatory practice. *Blumenthal v. Management Assist., Inc.*, 480 F.Supp. 470, 471 (N.D. Ill. 1979). This is evident from the limited amount of litigation that has occurred so far in this case, and the substantial amount of litigation that remains, short of the case being settled.

**E. Convenience of Witnesses**

Although ADMT contends the majority of witnesses are from Spokane, this is based only on the proof it believes necessary to make its case. A.K. contends the vast majority of its witnesses are located in and around Wisconsin, including those

---

[4] Improper venue requires dismissal or transfer pursuant to 28 U.S.C. Section 1406(a), whereas a motion for "convenience" transfer under Section 1404(a) is discretionary because venue is already proper in the district from which a transfer is sought.

**ORDER GRANTING MOTION TO TRANSFER-**         7

y

"improper." While that is not specifically a "convenience" challenge[4], it certainly indicates A.K. was not persuaded the Eastern District of Washington should be the place where litigation occurred. In the Joint Status Report filed June 17, 2008 (Ct. Rec. 20), A.K. made clear its assertion "that venue is most appropriate in the Eastern District of Wisconsin" and that it intended to file a motion to transfer venue. The motion to transfer was not filed until November 20, 2008, but A.K. says this was due in part to the fact that ADMT's counsel was out of the country on an extended vacation during the summer months and requested that no motions be filed during that time. A.K. contends the parties also explored settlement and mediation after the June 19 status conference. Although counsel for ADMT cannot recall settlement and mediation being explored, he did not deny that he took an extended vacation and asked that no motions be filed.

The court cannot find the delay in filing the motion has caused undue prejudice to ADMT or substantially increased the expense of litigation. Nor has A.K. brought the motion merely as a dilatory practice. *Blumenthal v. Management Assist., Inc.*, 480 F.Supp. 470, 471 (N.D. Ill. 1979). This is evident from the limited amount of litigation that has occurred so far in this case, and the substantial amount of litigation that remains, short of the case being settled.

**E. Convenience of Witnesses**

Although ADMT contends the majority of witnesses are from Spokane, this is based only on the proof it believes necessary to make its case. A.K. contends the vast majority of its witnesses are located in and around Wisconsin, including those

---

[4] Improper venue requires dismissal or transfer pursuant to 28 U.S.C. Section 1406(a), whereas a motion for "convenience" transfer under Section 1404(a) is discretionary because venue is already proper in the district from which a transfer is sought.

**ORDER GRANTING MOTION TO TRANSFER-** 7

located in Monticello, Iowa, and those associated with Dental USA in McHenry, Illinois. At this juncture, the court cannot discount A.K.'s assertion that the Dental USA witnesses are material to this litigation. The court concludes the majority of the witnesses (whether party or non-party) are located in or around Wisconsin and are either subject to the subpoena power of the Eastern District of Wisconsin (Fed. R. Civ. P. 45[5]) or are located within a relatively short driving distance of that district. Other potential witnesses located either in California, New Mexico, or Arizona will have to travel by air, whether the litigation occurs in Washington or Wisconsin. It is doubtful that traveling to Wisconsin instead of Washington would cause them any additional inconvenience.

### F. Ease of Access to Sources of Proof

ADMT asserts virtually all of the witnesses to the contract with knowledge of the etching and manufacturing processes created by ADMT are located in Spokane, as is all of the supporting documentation, including the original molds and specifications, as well as the results of the final autoclave testing. There is no dispute, however, that the molds used in the actual manufacturing of the handles, at issue here, are located in Wisconsin. Although these molds may have originally been sent to Arizona and used there as part of the "Generation 1" work, they were later sent to Wisconsin, sometime after August 2005.[6] It is this "Generation 2"

---

[5] Fed. R. Civ. P. 45(b)(2) allows service of a subpoena at any place without the district that is within 100 miles of the place of deposition, hearing, trial, production, or inspection specified in the subpoena, or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production or inspection specified in the subpoena.

[6] It is of no significance that A.K., instead of ADMT, transferred the molds from Arizona to Wisconsin. ADMT agreed to the "Generation 2" work and it was

**ORDER GRANTING
MOTION TO TRANSFER-         8**

work and the bonding process which occurred in Wisconsin that is at the heart of the dispute between ADMT and A.K.[7]  Therefore, the court concludes the most relevant physical evidence is located in Wisconsin. Moreover, the court agrees with A.K. that relevant documents can just as easily be produced in Wisconsin as in Washington.

## III. CONCLUSION

A plaintiff's choice of forum is accorded substantial weight in proceedings under § 1404(a) and courts generally will not order a transfer unless the "convenience" and "justice" factors strongly favor venue elsewhere. *Securities Investor Protection Corp.*, 764 F.2d at 1317. Because plaintiff's choice of forum is entitled to deference, the moving party, usually the defendant, has the burden of showing that "the convenience of the parties and the witnesses" and the "interest of justice" requires transfer to another district. *Commodity Futures Trading Comm'n*, 611 F.2d at 279. A transfer will not be ordered if the result is merely to shift the inconvenience from one party (defendant) to another party (plaintiff). A transfer should only be ordered when the transferee forum is clearly more convenient. *In re Volkswagen of America, Inc.*, 506 F.3d 376, 385 (5th Cir. 2007).

---

pursuant to that agreement that the molds ended up in Wisconsin.

[7] ADMT contends completed production runs of the handles were sent to Washington. The invoices which it has submitted in support of that assertion date from February and October 2004, during "Generation 1" work. The handles at issue in this contract dispute were manufactured during "Generation 2" and although samples of the work may have been sent to Spokane for autoclave testing, ADMT does not assert that completed production runs of those handles were sent directly to Spokane, as opposed to directly to Discus in California. In their declarations, former ADMT executives Allan Holms and Troy Mallonee state that A.K. was required to send "batch samples" from each handle run directly to ADMT in Spokane so that ADMT could do secondary quality control.

**ORDER GRANTING MOTION TO TRANSFER-    9**

…

Based on its consideration of the factors set forth above, the court concludes A.K. has met its burden of showing that "the convenience of the parties and the witnesses" and the "interest of justice" requires transfer to another district. The Eastern District of Wisconsin is "clearly" a more convenient forum.

In arriving at this conclusion, the court has relied upon the undisputed facts it has gleaned from a comparison of the Stritzke declaration with the declarations of Holms and Mallonee (see footnotes 1 and 2 *supra*), in addition to the undisputed facts the court has gleaned from the parties' memoranda and the oral argument presented by counsel. Defendant's Motion To Strike The Declaration of Bernie Stritzke (Ct. Rec. 47) is **DENIED**. The court has not considered the Collopy declaration and therefore, the motion to strike that declaration (Ct. Rec. 63) is **DISMISSED as moot**.

Defendant's Motion To Transfer Venue (Ct. Rec. 25) is **GRANTED** and the captioned action is transferred to the Eastern District of Wisconsin. Defendant's Motion To Strike Plaintiff's Expert Designations (Ct. Rec. 29), and Plaintiff's Motion To Amend/Correct Complaint (Ct. Rec. 40) should be re-noted for hearing before the U.S. District Court for the Eastern District of Wisconsin. The scheduling order filed in the captioned matter (Ct. Rec. 23) is vacated.

**IT IS SO ORDERED**. The District Executive is directed to enter this order and forward copies to counsel of record. Along with the file, a copy of this order shall be forwarded to the District Executive for the Eastern District of Wisconsin.

**DATED** this   31st   of December, 2008.

*s/Lonny R. Suko*
LONNY R. SUKO
United States District Judge

**ORDER GRANTING
MOTION TO TRANSFER-            10**